TRACY L. WILKISON
Acting United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
LAUREN RESTREPO (Cal. Bar No. 319873)
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3825
     Facsimile: (213) 894-0141
     E-mail:     lauren.restrepo@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 17-288-AB |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(a) |
| v. | |
| JESUS RAUL SALAZAR-ESPINOZA, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Lauren Restrepo, hereby files its opposition to defendant Jesus Raul Salazar-Espinoza's second motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(a) (Dkt. No. 89).

///

///

///

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 15, 2021          Respectfully submitted,

                                 TRACY L. WILKISON
                                 Acting United States Attorney

                                 CHRISTOPHER D. GRIGG
                                 Assistant United States Attorney
                                 Chief, National Security Division


                                 _____/s/_____
                                 LAUREN RESTREPO
                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

## TABLE OF CONTENTS

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES.............................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES..............................................1

I.   INTRODUCTION.................................................................1

II.  STATEMENT OF FACTS..........................................................2

     A.   Defendant's Crime and Sentence........................................2

     B.   Incarceration, Projected Release Date, and Vaccination
          Status................................................................3

     C.   Defendant's First Motion to Reduce Sentence...........................3

     D.   Defendant's Exhaustion of Administrative Remedies.....................4

     E.   Defendant's Second Motion to Reduce Sentence..........................4

     F.   The Bureau of Prisons' and Congress's Response to
          COVID-19..............................................................4

III. ARGUMENT....................................................................7

     A.   Defendant Is Not Eligible for a Sentencing Reduction..................8

          1.   Legal Framework for Sentencing Reduction Under
               Section 3582(c)(1)(A).............................................8

          2.   Defendant Has Failed to Establish Extraordinary
               and Compelling Reasons That Would Justify a
               Reduction in His Sentence........................................9

          3.   Even If Defendant Was Otherwise Eligible for
               Compassionate Release, the 18 U.S.C. § 3553(a)
               Factors Do Not Support a Shorter Sentence.......................10

IV.  CONCLUSION.................................................................13

**TABLE OF AUTHORITIES**

DESCRIPTION                                                              PAGE

**CASES**

Gall v. United States,
        552 U.S. 38, 49 (2007).........................................11

United States v. Chambliss,
        948 F.3d 691 (5th Cir. 2020)..................................11

United States v. Grummer,
        __ F. Supp. 3d __, 2021 WL 568782 (Feb. 16, 2021).............9

United States v. Keller,
        2 F.4th 1278 (9th Cir. 2021)...................................8

United States v. Mangarella,
        No. 06-CR-151, 2020 WL 1291835 (W.D.N.C. Mar. 16, 2020.......11

United States v. Smith,
        __ F. Supp. 3d __, 2021 WL 1890770 (E.D. Cal. May 11, 2021)....9

United States v. Wages,
        271 Fed. App'x 726, 728 (10th Cir. 2008).....................11

United States v. Willis,
        382 F. Supp. 3d 1185, 1188 (D.N.M. 2019).....................11

**STATUTES**

18 U.S.C. § 3582(c)..........................................passim

**OTHER AUTHORITIES**

CDC, Moderna COVID-19 Vaccine Overview and Safety  (Aug. 19,
        2021), available at https://www.cdc.gov/coronavirus/2019-
        ncov/vaccines/different-vaccines/Moderna.html..................6

CDC, COVID-19 Vaccine Breakthrough Case Investigation and
        Reporting, available at https://www.cdc.gov/vaccines/covid-
        19/health-departments/breakthrough-cases.html (laste
        visited Oct. 14, 2021.........................................6

DOJ, Statement of BOP Director and Medical Director Before the
        Senate Committee on the Judiciary (Jun. 2, 2020), available
        at
        https://www.bop.gov/resources/news/pdfs/06022020_written_st
        atement.pdf...................................................5

Federal Bureau of Prisons, COVID-19 Vaccination Efforts
        Commended (Jan. 16, 2021), available at
        https://www.bop.gov/resources/news/20210116_covid_vaccine
        efforts_commended.jsp.........................................5

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

Federal Bureau of Prisons, COVID-19 Vaccination Status (Feb. 23,
        2021), <u>available at</u>
        https://www.bop.gov/resources/news/20210223_vaccination_sta
        tus.jsp.......................................................5

Federal Bureau of Prisons, Overview of COVID-19 Pandemic
        Response Plan (August 31, 2020), <u>available at</u>
        https://www.bop.gov/foia/docs//Overview_of_COVID_Pandemic_R
        esponse_Plan_08312020.pdf....................................5

Federal Bureau of Prisons, COVID-19, <u>available at</u>
        https://www.bop.gov/coronavirus/ (last visited Oct. 14,
        2021).....................................................5, 6

Federal Bureau of Prisons, COVID-19 Coronavirus, <u>available at</u>
        https://www.bop.gov/coronavirus/index.jsp (last visited
        Oct. 14, 2021)...............................................7

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.   INTRODUCTION

3

Defendant Jesus Raul Salazar-Espinoza ("defendant") has filed a

4 motion for appointment of counsel and a second, successive motion to

5 reduce his sentence ("Motion") in which he seeks to be released after

6 serving only a fraction of the sentence imposed for his possession of

7 large quantities of methamphetamine, heroin, fentanyl, and marijuana

8 for sale, which he protected with a loaded Colt MK-4 series 80

9 handgun.  At the time of sentencing, the Court imposed the minimum

10 sentence allow by law, which was well below defendant's applicable

11 Guidelines range.  Defendant's Motion is based primarily on concerns

12 about the COVID-19 pandemic -- despite defendant's own receipt of a

13 COVID-19 vaccine while in BOP custody -- defendant's purported health

14 conditions, and his lack of a disciplinary record while in prison.

15

As to defendant's motion for appointment of counsel to assist

16 with his request for compassionate release, the government take no

17 position.

18

Defendant's second, successive motion for a reduction of his

19 sentence must be dismissed or denied.  The relevant statute, 18

20 U.S.C. § 3582(c)(1)(A), requires a defendant to provide an

21 "extraordinary and compelling" reason for release.  Defendant has not

22 made that showing.  He is fully vaccinated, having received both

23 doses of the Moderna coronavirus vaccine pursuant to the Bureau of

24 Prisons' aggressive program to vaccinate staff and inmates.

25 According to current information from the Center for Disease Control

26 ("CDC"), defendant therefore has 94% protection from a future

27 symptomatic infection.  Such a low risk eliminates the need to

28 release defendant to protect him from possible infection.

Notwithstanding the vaccine, the general threat of COVID-19, defendant's manageable health conditions, and his good behavior in prison do not constitute "extraordinary and compelling" reasons that merit release.

The balance of the 18 U.S.C. § 3553(a) factors also do not weigh in defendant's favor.  The serious nature of the offense, the need for deterrence and just punishment, and defendant's current classification as medical care level 2 (stable, chronic care) do not warrant cutting defendant's already lenient sentence short by 66 percent.

Accordingly, defendant's motion should be denied.

## II.   STATEMENT OF FACTS

### A.   Defendant's Crime and Sentence

As detailed in defendant's Presentence Investigation Report ("PSR") (Dkt. No. 47, PSR ¶¶ 5-7.), when a search warrant was executed at defendant's residence by federal agents, defendant was found in possession of large quantities of methamphetamine, heroin, fentanyl, and marijuana.  (PSR ¶ 6.)  In total, inside his residence defendant possessed approximately 3.84 kilograms of pure methamphetamine, 2.7 kilograms of heroin, 235 grams of fentanyl, and 5.63 kilograms of marijuana.  (Id.)  In addition, in defendant's bedroom, agents found a loaded Colt MK-4 series 80 handgun on his nightstand.  (Id. at ¶ 7.)

On November 2, 2018, defendant pleaded guilty, pursuant to a plea agreement, to two counts of a five-count Indictment which charged him with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a), 21 U.S.C. § 841(b)(1)(A)(viii) (Count 1) and possession of a firearm in

2

furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 4).

The United States Probation Office ("USPO") filed its PSR and Recommendation Letter on March 22, 2019. (Dkt. Nos. 46-47.) The USPO calculated a total offense level of 33 and calculated defendant's criminal history category as IV, yielding an imprisonment range of 188-235 months on Count 1 under the United States Sentencing Guidelines ("USSG" or the "Guidelines") and an additional 60-month consecutive sentence on Count 4.

At defendant's sentencing, the government moved for a three-level downward departure, which, when it was applied, brought defendant's applicable Sentencing Guidelines range on Count 1 down to 135-168 months, to be followed by the 60-month consecutive sentence on Count 4. The Court sentenced defendant to a total term of 180 months' imprisonment, the mandatory minimum sentence required by law. (Dkt. No. 65.)

**B.    Incarceration, Projected Release Date, and Vaccination Status**

Defendant is currently serving his sentence at FCI-Victorville. (Ex. A at 4.) His projected release date is March 12, 2030, assuming he earns good time credit. (Id.) Defendant has served approximately 34% of his sentence. (Id.)

Defendant is fully vaccinated; he received his first dose of the Moderna vaccine on March 11, 2021 and his second dose on April 7, 2021. (Ex. B.)

**C.    Defendant's First Motion to Reduce Sentence**

In December 2020, defendant filed his first compassionate release request, arguing that the COVID-19 pandemic, in combination

3

1   with his health conditions, established extraordinary and compelling

2   reasons to warrant his release.  (Dkt. No. 83.)  On January 7, 2021,

3   this Court denied defendant's motion.  (Dkt. No. 84.)

4        **D.    Defendant's Exhaustion of Administrative Remedies**

5        On June 7, 2021, the Warden, having reviewed defendant's request

6   for compassionate release due to his current health conditions,

7   denied the request.  (Ex. C at 1-2.)  The Warden found that defendant

8   failed to "demonstrate extraordinary or compelling circumstances"

9   because defendant's documented health conditions of "diabetes, high

10  blood pressure, high cholesterol and heart problems" were not

11  terminal or debilitating and could be managed and treated within the

12  prison.  (Id.)  The Warden also found that defendant's lack of a

13  disciplinary record and participation in programs while in prison

14  were also not extraordinary or compelling circumstances that

15  warranted a reduction in defendant's sentence. (Id. at 2.)

16       **E.    Defendant's Second Motion to Reduce Sentence**

17       Defendant has now filed a second, successive compassionate-

18  release motion before this Court.  (Dkt. No. 89.)  In the Motion,

19  defendant makes many of the same arguments he made in his first

20  motion, again arguing that the COVID-19 pandemic, when coupled with

21  his various health conditions, warrants release.  (Id. at 6-10.)  In

22  the Motion, defendant failed to note that he has been fully

23  vaccinated against COVID-19 since April 2021.  (See Ex. B.)

24       **F.    The Bureau of Prisons' and Congress's Response to COVID-19**

25       Throughout the COVID-19 pandemic, the Federal Bureau of Prisons

26  ("BOP") has taken aggressive steps to protect inmates' health and to

27  resist the spread of COVID-19.  DOJ, Statement of BOP Director and

28  Medical Director Before the Senate Committee on the Judiciary (Jun.

2, 2020), available at
https://www.bop.gov/resources/news/pdfs/06022020_written_statement.pd
f.  On August 31, 2020, the BOP adopted a comprehensive Pandemic
Response Plan that applies to all BOP facilities.  BOP, Overview of
COVID-19 Pandemic Response Plan (Aug. 31, 2020), available at
https://www.bop.gov/foia/docs//Overview_of_COVID_Pandemic_Response_Pl
an_08312020.pdf.  The eleven modules of the Pandemic Response Plan
provide for each BOP facility to prepare for, respond to, and recover
from outbreaks of COVID-19.  Id.

In December 2020, the BOP started its vaccination program for
staff and inmates.  It is the BOP's highest priority to continue to
mitigate the spread of COVID-19 in its facilities, and as of February
2021, all BOP facilities have received some doses of a vaccine.  BOP,
COVID-19 Vaccination Status (Feb. 23, 2021), available at
https://www.bop.gov/resources/news/20210223_vaccination_status.jsp.
The first priority has been to vaccinate staff to prevent
transmission in and out of facilities, but inmates are also being
vaccinated.  BOP, COVID-19 Vaccination Efforts Commended (Jan. 16,
2021), available at
https://www.bop.gov/resources/news/20210116_covid_vaccine_efforts_com
mended.jsp.  As of mid-October 2021, the BOP has administered 232,448
doses of the COVID-19 vaccine to staff and inmates.  BOP, COVID-19,
available at https://www.bop.gov/coronavirus/ (last visited Oct. 14,
2021).

According to clinical trials, the Moderna vaccine, which
defendant received, is 94.1% effective at preventing COVID-19
infections. See Centers for Disease Control, Centers for Disease
Control, Moderna COVID-19 Vaccine Overview and Safety, Aug. 19, 2021

available at https://www.cdc.gov/coronavirus/2019-
ncov/vaccines/different-vaccines/Moderna.html).

The vaccines were the subject of extensive clinical trials before authorization, which revealed high effectiveness in preventing infection, and particularly in preventing severe illness or death. The data thus far show remarkable success in the real world.  The CDC reports that as of October 4, 2021, there are more than 185 million Americans who have been fully vaccinated.  CDC, COVID-19 Vaccine Breakthrough Case Investigation and Reporting, available at https://www.cdc.gov/vaccines/covid-19/health-departments/breakthrough-cases.html (last visited Oct. 14, 2021). Within that group, only approximately 30,000 hospitalizations from symptomatic "breakthrough infections" have been reported, and only approximately 6,617 deaths (0.000036%).  (Id.)  These data suggest a level of risk from COVID-19 to a vaccinated person far less than that faced by prisoners and all other persons from myriad other ailments and hazards of daily life.

There has been widespread recent reporting that the Delta variant of COVID-19 is now the most prevalent variant causing new infections in the United States, posing a significant risk to unvaccinated persons.  The CDC reports, however, that the approved vaccines are proving highly effective against the Delta variant, stating, "FDA-authorized COVID-19 vaccines protect against Delta and other known variants." The CDC adds: "Infections happen in only a small proportion of people who are fully vaccinated, even with the Delta variant. Some breakthrough infections are expected, but remain rare. . . . All vaccines are particularly effective against severe illness, hospitalization and death."  CDC, What You Need to Know

About Variants (Sept. 20, 2021), <u>available at</u>
https://www.cdc.gov/coronavirus/2019-
ncov/variants/variant.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2F
coronavirus%2F2019-ncov%2Ftransmission%2Fvariant.html; <u>see also</u> CDC,
Delta Variant: What We Know About the Science, (Aug. 26, 2021)
<u>available at</u> https://www.cdc.gov/coronavirus/2019-
ncov/variants/delta-variant.html ("Vaccines in the US are highly
effective, including against the Delta variant.").

The BOP's vaccination and other mitigation efforts reflect its
commitment to fighting COVID-19 and protecting inmates.  Indeed,
because of those efforts, there are no inmates at defendant's
facility who are currently diagnosed with COVID-19.  BOP, COVID-19
Coronavirus (updated daily at 12pm
https://www.bop.gov/coronavirus/index.jsp (last visited Oct. 15,
2021).  Of course, BOP has not been immune from the pandemic.  Across
the country, approximately 262 BOP inmates -- out of a total of about
145,000 -- are currently diagnosed with COVID-19; an additional
42,986 inmates have recovered, and 262 inmates have died (10 while on
home confinement).  <u>Id.</u>

**III. ARGUMENT**

As detailed below, defendant is not eligible for a sentence
reduction under 18 U.S.C. § 3582(c)(1)(A).  Even if he were, the
Court should not grant him one: his original sentence was
appropriately lenient and justified under the sentencing factors in
18 U.S.C. § 3553(a).

**A.   Defendant Is Not Eligible for a Sentencing Reduction**

Defendant's request to reduce his custodial sentence should be denied because he does not meet the statutory conditions that would render him eligible for that extraordinary form of relief.

1.   Legal Framework for Sentencing Reduction Under Section 3582(c)(1)(A)

A district court generally "may not modify a term of imprisonment once it has been imposed," except in very limited circumstances.  18 U.S.C. § 3582(c).  A motion under Section 3582(c)(1)(A) for a permanent reduction in a defendant's sentence is one of the few exceptions to this rule.  Id. § 3582(c)(1)(A). Because this relief is both drastic and permanent, it is subject to strict statutory conditions.  First, the defendant must fully exhaust his or her administrative remedies with the BOP before filing a motion with the district court.  Id.  Second, the defendant must demonstrate that "extraordinary and compelling reasons" warrant a reduction in sentence, and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id.  Third, the district court must consider "the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable."  Id.  "[A]lthough a district court must perform this sequential inquiry before it grants compassionate release, a district court that properly denies compassionate release need not evaluate each step." United States v. Keller, No. 20-50247, 2021 WL 2695129, at *5 (9th Cir. July 1, 2021).

As set forth in greater detail below, defendant does not meet the requisite statutory conditions; he has not presented an

extraordinary and compelling reason and the § 3553(a) factors do not weigh in favor of compassionate release.

   2.   Defendant Has Failed to Establish Extraordinary and Compelling Reasons That Would Justify a Reduction in His Sentence

   First, defendant's Motion should be denied because he has not demonstrated that extraordinary and compelling reasons warrant a reduction in his sentence.

   Defendant asserts in the Motion that dangers related to the COVID-19 pandemic, combined with his health conditions, constitute extraordinary and compelling reasons that justify reducing his sentence.  (Motion at 3-8.)  At the same time, however, defendant fails to note that he has been fully vaccinated against COVID-19 since April 2021.  (See Ex. B.)  Given that defendant has been fuuly vaccinated against COVID-19 for over 6 months, he cannot meet his burden to demonstrate that "extraordinary and compelling reasons" -- such as a risk of becoming severely ill due to COVID-19 -- justify compassionate release in his case.  See, e.g., United States v. Smith, __ F. Supp. 3d __, 2021 WL 1890770, at *3 (E.D. Cal. May 11, 2021) ("Although no federal court of appeal appears to have considered the question, district courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); United States v. Grummer, __ F. Supp. 3d __, 2021 WL 568782, at *2 (Feb. 16, 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19.") (S.D. Cal. Feb. 16, 2021).

9

1    Moreover, as detailed above, BOP has in place extensive

2  procedures for handling the COVID-19 pandemic, and defendant has

3  presented no evidence that BOP is unable to manage his preexisting

4  health conditions.  Defendant's BOP medical care records note that

5  defendant is in care category 2, which corresponds to "stable,

6  chronic care."  (See Ex. D.)  While defendant attached copies of some

7  of his medical records to the Motion, he has not provided any

8  evidence that BOP is unable to manage his common chronic health

9  conditions, which include diabetes, hypertension, and hyperlipidemia.

10  (Ex. E at 1, 3.)  But, even if the Court were to credit defendant's

11  claim that his current health conditions make him especially

12  vulnerable to COVID-19, that claim would not constitute an

13  extraordinary and compelling reason for a sentence reduction,

14  especially given that defendant has been fully vaccinated since April

15  2021.  In any event, defendant's health concerns are not new, and

16  were highlighted by defendant in his written sentencing position and

17  taken into account by the Court at his sentencing.  (Dkt. No. 62.)

18    Defendant cannot demonstrate eligibility under 18 U.S.C.

19  § 3582(c)(1)(A).  Accordingly, neither the COVID-19 pandemic nor

20  defendant's current health issues are a basis for modifying his

21  custodial sentence.

22    3.   Even If Defendant Was Otherwise Eligible for
         Compassionate Release, the 18 U.S.C. § 3553(a) Factors
23       Do Not Support a Shorter Sentence

24    Even if defendant were statutorily eligible, a sentencing

25  reduction from a lawfully imposed sentence is a "rare" and

26  "extraordinary" remedy, within a district court's discretion to deny.

27  See United States v. Chambliss, 948 F.3d 691, 693-94 (5th Cir. 2020);

28  United States v. Mangarella, No. 06-CR-151, 2020 WL 1291835, at *2-3

10

(W.D.N.C. Mar. 16, 2020).  If release were not limited to the "rare case" that presented a sufficiently "exceptional reason" to shorten a defendant's sentence, Section 3582(c)(1)(A) would yield significant sentencing disparities.  See United States v. Wages, 271 Fed. App'x 726, 728 (10th Cir. 2008) (collecting pre-trial detention cases); United States v. Ebbers, 432 F. Supp. 3d. 421, 429 (S.D.N.Y. 2020). Accord United States v. Willis, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) ("[M]ost courts treat compassionate release 'due to medical conditions [a]s . . . a rare event.").

Additionally, any compassionate-release decision -- even for a statutorily eligible defendant -- must also consider the factors under 18 U.S.C. § 3553(a).  See 18 U.S.C. § 3582(c)(1)(A)(i).  When considering these factors, the Sentencing Guidelines range "should be the starting point and the initial benchmark."  Gall v. United States, 552 U.S. 38, 49 (2007).  Any deviation must be reasonable, and a "major departure" from the Guidelines range "should be supported by a more significant justification than a minor one."  Id. at 50.

Defendant argues that the § 3553(a) factors support a sentencing reduction, including his lack of a disciplinary record in prison. (Motion at 8-9.)  Those factors do not support his request for a premature, permanent reduction of his sentence, especially when defendant has served only a third of his prison term.

Moreover, defendant's sentence was already well below the advisory Sentencing Guidelines range.  At sentencing, the USPO calculated defendant's Guidelines range as 188-235 months' imprisonment on Count 1, followed by an additional 60 months' imprisonment on Count 4.  At sentencing, the government requested a

11

three-level downward departure, which the Court applied.  Defendant's applicable Sentencing Guidelines range on Count 1 was thereby reduced to 135-168 months' imprisonment.  What's more, despite the seriousness of his offense, defendant received a sentence that was 15 months below the low end of his new advisory Guidelines range (and the minimum sentence required by law) based, in part, on many of the same mitigating factors he now cites in his Motion.  (See Dkt. Nos. 62, 65.)  And he received that below-Guidelines sentence despite the fact that he was trafficking in multi-kilogram quantities of methamphetamine, heroin, and marijuana, as well as over 200 grams of fentanyl -- an extremely dangerous and deadly synthetic opioid. Indeed, defendant appeared to be running a one-stop drug store from his home, which he protected with a loaded handgun he kept on his bedside table.  Thus, at the time of his offense, the defendant engaged in prohibited conduct that presented a significant danger to the community.  Deterrence and just punishment do not favor cutting roughly 66 percent off an already lenient sentence.

While it is commendable that defendant has no disciplinary history, rehabilitation alone does not warrant release.  To the contrary, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  USSG § 1B1.13, comment. (n.3).

Defendant's current sentence thus already accounts for the § 3553(a) factors he cites in the Motion.  Indeed, releasing defendant after serving a small fraction of his sentence is inconsistent with the goals of sentencing, particularly when

defendant has presented no evidence that the Bureau of Prisons is unable to manage his health conditions.

In sum, defendant cannot show "extraordinary and compelling reasons" to permanently reduce his sentence and reducing his sentence is inconsistent with the factors set forth in § 3553(a).

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court deny defendant's Motion.